**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **STEFANEE DAWKINS, on behalf of herself and others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | No.  20 C 4063 |
| | ) | |
| **NR 1 TRANSPORT, INC., ZBA, Inc., and NERIJUS ZITKEVICIUS** | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

After working as a truck driver for Defendants NR 1 Transport, Inc. ("NR 1") and ZBA, Inc. for five months, Plaintiff Stefanee Dawkins asked the companies' owner, Defendant Nerijus Zitkevicius, to pay her both the wages for her final week of work and the amounts withheld in an "escrow" account.  Zitkevicius refused.  In this action, Plaintiff alleges violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq.*  She also asserts state law claims of conversion and unjust enrichment.  Dawkins contends other drivers were similarly denied pay and thus asks the court to certify a "collective action" under the FLSA and to authorize notice to the other drivers of their right to opt in to her FLSA claim.  Before the court today is Defendants' motion to dismiss Plaintiff's Amended Complaint for failure to state a claim, as well as Plaintiff's motion to certify a conditional collective action.  For the following reasons, Defendants' motion to dismiss [34] is granted in part and denied in part.  Plaintiff's motion for conditional certification [18] is granted.

<u>**BACKGROUND**</u>

**A.      Allegations from the Amended Complaint**

In deciding Defendants' motion to dismiss, the court accepts the following allegations as true:  Plaintiff Stefanee Dawkins worked as a truck driver for ZBA from approximately September

2018 to November 2018.[1]  (Am. Compl. ¶ 4.)  ZBA is an Indiana corporation that operates a truckyard in Joliet, Illinois and is owned and operated by Defendant Nerijus Zitkevicius.  (*Id.* ¶¶ 5, 7.)  In November 2018, ZBA "purported to terminate Plaintiff's employment," and told her she would begin driving for Defendant NR 1 instead.  (*Id.* ¶ 22.)  NR 1, also an Indiana corporation, jointly operates the same truckyard with ZBA and is likewise owned and operated by Zitkevicius.  (*Id.* ¶¶ 6, 7.)  Plaintiff and other truck drivers were paid on a per-mile basis and earned additional flat-rate payments for extra stops and layovers.  (*Id.* ¶ 17.)  Plaintiff alleges that she regularly worked eighty to ninety hours per week for ZBA and NR 1, drove a truck owned and insured by ZBA and NR 1, and reported to the same company dispatcher in Joliet, Illinois for both jobs.  (*Id.* ¶ 30.)  Defendants' dispatcher told Plaintiff where and when to drive and scheduled loads for her to haul to various locations around the country.  (*Id.* ¶ 31.)  Plaintiff had no discretion over which loads she would haul or where she would haul them.  (*Id.* ¶ 32.)  She alleges in her Amended Complaint that Defendants exercised "substantial control over Plaintiff and other company drivers," but nevertheless improperly classified Plaintiff and other company drivers as independent contractors.  (*Id.* ¶ 29.)

It was Defendants' practice to make regular deductions from truck drivers' weekly paychecks.  (*Id.* ¶ 20.)  In addition to weekly deductions for insurance payments and "office fee[s]," Defendants regularly deducted $250 per week, up to $2,000 in total, to be held in "escrow."  (*Id.* ¶ 21.)  ZBA and NR 1 informed Plaintiff and other drivers, at the beginning of their employment, that they would receive the escrow funds within 45 days of termination of their employment.  (*Id.*)  During the relevant times, Zitkevicius was aware of this deduction policy and had the authority to put an end to it.  (*Id.* ¶ 20.)  In approximately November 2018, someone stole the truck that Plaintiff

---

[1]      Although Plaintiff originally named ZBA as a defendant, the parties agree that ZBA was never served in this case.  (Cert. Resp. [44] at 9; Cert. Reply [47] at 11.)  Plaintiff claims that she never served ZBA because ZBA and NR 1 are one and the same.  (Cert. Reply at 11.)  In any event, it has been nine months since Plaintiff filed her Amended Complaint, and she has shown no intention of serving ZBA in this case.  Claims against ZBA are therefore dismissed without prejudice pursuant to FED. R. CIV. P. 4(m).

was driving for Defendants. (*Id.* ¶ 18.) Although Plaintiff had "nothing to do with the theft," Zitkevicius informed her that NR 1 would be taking $1,500 from her escrow deposit as a penalty. (*Id.*) NR 1 then began deducting more escrow money from Plaintiff's paychecks, deducting an additional $750 in December 2018 and January 2019. (*Id.* ¶ 19.)

In January 2019, after she suffered an on-the-job injury, Plaintiff voluntarily terminated her employment with NR 1. (*Id.* ¶ 23.) In her last work week—January 7, 2019 through January 13, 2019—she worked more than thirty hours. (*Id.* ¶ 24.) Upon Plaintiff's termination from NR 1, Defendants refused to issue her final weekly paycheck and refused to return any of her escrow wages. (*Id.*) Almost two months later, on March 8, 2019, Plaintiff sent Zitkevicius a text message saying, "Hey Nick this is Stefanee I was wondering when I would receive my last check and escrow back. I tried calling Karolina [*sic*] but go[t] no answer. In 2 days I will be gone 2 months." (*Id.* ¶ 25.) Zitkevicius ignored the text message and refused to issue Plaintiff's final paycheck or reimburse her escrow money, although he had the authority to do so. (*Id.* ¶ 26.) Plaintiff has identified another terminated driver, Donald Brown, who also personally asked Zitkevicius multiple times to issue Brown's last paycheck and reimburse his escrow money and was turned down. (*Id.* ¶ 28.) According to the Amended Complaint, it is Defendants' regular practice to withhold drivers' escrow funds and final paychecks from employees upon termination of their employment with NR 1. (*Id.* ¶ 27.)

**B.   Additional evidence**

In support of her request for conditional FLSA collective action, Plaintiff has submitted her own declaration and the declarations of Donald Brown, Eric Wainwright, and Robert Rodriguez— three other drivers who formerly worked for ZBA or NR 1 and contend that they never received either their escrow amounts or their last paycheck despite working more than thirty hours in their final weeks of work. (Ex. B to Cert. Mot. [19-2] (hereinafter "Dawkins Decl."), ¶¶ 2, 8–9; Ex. C to Cert. Mot. [19-3] (hereinafter "Brown Decl."), ¶¶ 2, 10; Ex. D to Cert. Mot. [19-4] (hereinafter "Wainwright Decl."), ¶¶ 2, 7, 9; Ex. E to Cert. Mot. [19-5] (hereinafter "Rodriguez Decl."), ¶¶ 2, 8–

3

9.) All four declarants assert that NR 1 and/or ZBA owned the trucks they drove, that NR 1 and/or ZBA paid to insure the trucks, that NR 1 and/or ZBA paid to fuel and maintain the trucks, that the declarant was prohibited from driving the trucks for other companies, that the declarant was paid about 60 cents per mile, and that, while the companies deducted money from declarants' paychecks for "occupational accident insurance" and "office fees," none of the declarants invested any of their own money in the work they performed for either NR 1 or ZBA. (*See generally* Dawkins Decl.; Brown Decl.; Wainwright Decl.; Rodriguez Decl.)

There were some differences among the declarations: The declarants' lengths of employment for either company ranged from less than one month to about a year and a half (Wainwright Decl. ¶ 2; Rodriguez Decl. ¶ 2); Wainwright finished his employment with ZBA rather than with NR 1 (Wainwright Decl. ¶ 7); Brown claims that he was labeled as an Independent Contractor but treated as a company truck driver (Brown Decl. ¶ 3); and Rodriguez notes that he was ultimately paid half of his final week's wages after filing a complaint with the Texas Workforce Commission. (Rodriguez Decl. ¶ 10.) Dawkins and Wainwright, the only two declarants who worked for both ZBA and NR 1, asserted that ZBA and NR 1 are "one and the same" in that, although the companies have different names, they are operated and managed by the same individuals, operate out of the same office in Joliet, Illinois, and use the same dispatcher to tell Dawkins and Wainwright which loads to haul and where to deliver them. (Dawkins Decl. ¶ 3; Wainwright Decl. ¶ 3.) All four declarants noted their understanding that this lawsuit represented an effort to recover minimum wages and unlawful deductions taken from some dozens of other workers who worked for ZBA and/or NR 1. (Dawkins Decl. ¶ 10; Brown Decl. ¶ 11; Wainwright Decl. ¶ 10; Rodriguez Decl. ¶ 11.)

In response to these declarations, Defendants submitted the affidavit of Nerijus Zitkevicius. (Ex. A to Cert. Resp. [44-1] (hereinafter "Zitkevicius Aff.").) Zitkevicius contended that NR 1 contracts independently with each of its drivers, resulting in varying compensation rates for each driver. (*Id.* ¶ 4.) Zitkevicius's declaration otherwise raises more questions than it

4

answers. For example, Zitkevicius says it was "incorrect" that each declarant was paid approximately sixty cents per mile driven, but he did not reveal what any individual declarant was actually paid. Instead, he simply observes that "some drivers are paid more than sixty cents per mile, and other drivers are paid based on a percentage of the load." (*Id.* ¶ 5.) It is not clear whether Zitkevicius contends that any of Plaintiff's declarants made inaccurate statements about their pay; he says only that *not all* NR 1 drivers are paid at a rate of sixty cents per mile. Zitkevicius does assert that drivers lease their own vehicles from NR 1 and control their own schedule, that NR 1 does not tell drivers how to perform their duties or drive their vehicles, that some drivers operate as incorporated business entities while others do not, that some drivers invest in additional equipment (i.e., dollies, navigation systems), and that some drivers work for part of the year or on an irregular basis. (*Id.* ¶¶ 6–7, 10–11, 13–14.)

Plaintiff rebutted the statements in Zitkevicius's affidavit by means of two additional documents. The first, a series of "screenshots" of the NR 1 website, reflects that NR 1 hires drivers into two separate categories: "Owner Operators" and "Company Drivers." (Ex. F to Cert. Reply [47-1] (hereinafter "NR 1 Website").) Under the "Owner Operator" job listing, the NR 1 website states "YOU CHOOSE YOUR HOME TIME – YOU'RE THE BOSS!" while under the "Company Drivers" job listing, the NR 1 website states "The bigger the dream – the more important the team!" (*Id.* at 3–5.) The screenshots provide no further information regarding the differences between owner operators and company drivers. Plaintiff asserts that the screenshots rebut Zitkevicius's affidavit because she and the other declarants were company drivers (*see, e.g.*, Dawkins Decl. ¶ 2), whereas Zitkevicius's statements mainly highlight differences among owner-operators who tend to have more control over their employment. (Cert. Reply at 10.)

Second, Plaintiff submits a May 8, 2018 complaint filed with the Illinois Department of Labor ("IDOL") in which a company truck driver for NR 1 complained that—three months after the complainant had left NR 1—NR 1 had not yet released the complainant's final paycheck of $4,233, despite "many calls and emails" from the complainant. (Ex. G to Cert. Reply [47-2] (hereinafter

"IDOL Compl."), at 2.) According to the complaint, although the company considered the complainant an independent contractor, the complainant had been driving a company truck, the company was responsible for fuel and maintenance expenses, the complainant had not leased the truck, the complainant was not free to accept or reject the load, and the complainant was getting paid just 54 cents per mile. (*Id.*) Additionally, the complainant attached a copy of their contract with NR 1 from April 14, 2017. (*Id.* at 3–5.) Among other things, the contract stated that "All drivers are required to give a two week notice to terminating job. Failure to comply operator will be subject to forfeit of the last check." (*Id.* at 5.)

## C.    Procedural history

On July 10, 2020, Plaintiff Dawkins filed this suit [1] against Defendants NR 1, ZBA, and Zitkevicius, alleging wage claims under the FLSA, 29 U.S.C. § 201, *et seq.*, and the IWPCA, 820 ILCS 115/1, *et seq.*, conversion of Plaintiff's escrow and final paycheck, and unjust enrichment. (Am. Compl. ¶¶ 44–61.) Plaintiff alleged that she would be pursuing class certification of a "FLSA Minimum Wage Class," an "IWPCA Class," and a "Conversion Class." (*Id.* ¶¶ 34–36.) After Defendants moved to dismiss the original complaint [22], Plaintiff filed the Amended Complaint that is now before the court. As noted, a motion to dismiss the Amended Complaint and Plaintiff's motion for conditional certification are ready for decision.

## DISCUSSION

## A.    Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 290 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In evaluating such a motion, the court will "construe [the complaint] in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the nonmoving party's favor]." *Berger*, 842 F.3d at 289–90 (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action,"

however, are not sufficient. *Berger*, 842 F.3d at 290 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Here, Defendants argue that Plaintiff has failed to adequately plead her FLSA claim against Defendant Zitkevicius and has failed to adequately plead any of her IWPCA, conversion, or unjust enrichment claims against either Defendant Zitkevicius or Defendant NR 1. The court will address each argument in turn.

      **1.      FLSA claim against Zitkevicius**

The minimum wage provision of the FLSA provides that "[e]very employer shall pay to each of his employees . . . $7.25 an hour . . . ." 29 U.S.C. § 206(a). An employer who violates this provision "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages." *Id.* § 216(b). Defendants argue that the FLSA does not apply to Zitkevicius because Plaintiff has failed to plead allegations sufficient to establish that Zitkevicius qualifies as an employer under the FLSA. The court disagrees.

The statute defines "employer" broadly as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and the Supreme Court has "instructed courts to construe the terms 'employer' and 'employee' expansively to effect Congress's remedial intent in enacting the FLSA." *Bastian v. Apartment Inv. & Mgmt. Co.*, No. 07 C 2069, 2008 WL 4671763, at *2 (N.D. Ill. Oct. 21, 2008) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)). But "[t]he Seventh Circuit has not specifically addressed the legal test or standard to apply in deciding if an individual defendant is an employer under the FLSA." *Schneider v. Cornerstone Pints, Inc.*, 148 F. Supp. 3d 690, 697 (N.D. Ill. 2015), *supplemented*, No. 13 CV 4887, 2016 WL 278813 (N.D. Ill. Jan. 15, 2016). In *Schneider*, Judge Shah explained how courts in this circuit have come to define the term "employer." Courts in other circuits consider four factors: "whether the defendant (1) possessed the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment

records." *Id.* at 697 (citing *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014); *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139–40 (2d Cir. 1999)). The Seventh Circuit has declined to apply the four-factor test rigidly. *Schneider*, 148 F. Supp. 3d at 697 (citing *Moldenhauer v. Tazewell– Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008)). Instead, the Seventh Circuit interprets the act as authorizing suit against another employee if that other person had "*supervisory authority*" and "*was responsible in whole or part for the alleged violation.*" *Schneider*, 148 F. Supp. 3d at 697 (emphasis in original) (quoting *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987)). Like Judge Shah and other colleagues in this district, this court will "look at all facts surrounding the defendant's supervision of the employee and determine whether the defendant exercised control and authority over the employee in a manner that caused the FLSA violation (at least in part)." *Id.* at 698. *See, e.g.*, *Solsol v. Scrub, Inc.*, No. 13 CV 7652, 2018 WL 4095103, at *4 (N.D. Ill. Aug. 28, 2018) (applying the *Schneider* standard to determine, on summary judgment, if FLSA defendants were employers); *Bum Hoon Lee v. BK Schaumburg Inc.*, No. 18-cv-3593, 2020 WL 3577994, at *3 (N.D. Ill. July 1, 2020) (same).

Plaintiff Dawkins alleges that Zitkevicius owns and operates NR 1 and supervises the day-to-day operations of the company. (Am. Compl. ¶ 7.) She also alleges that Zitkevicius "had authority to make decisions about Plaintiff and other drivers' pay, including whether they should receive their final paycheck." (*Id.*) And in Plaintiff's case, when Zitkevicius received a text message from Plaintiff complaining that she had not received her last paycheck or her escrow, Zitkevicius refused to remedy the situation despite his authority to do so. (*Id.* ¶¶ 25–26.) He also ignored similar requests from another driver, Donald Brown, for his own final paycheck and escrow money. (*Id.* ¶ 28.) Plaintiff also alleges more broadly that it was "Defendants' regular practice to withhold drivers' escrow funds and to withhold final paychecks from employees upon termination of their employment with NR 1."[2] (*Id.* ¶ 27.) Plaintiff has alleged that Zitkevicius was

---

[2] Although Plaintiff was not specific about whom the word "Defendants" referred to, it is reasonable to infer that she meant to include Defendant Zitkevicius in that group. At the

the owner of NR 1, supervised day-to-day activities, had the authority to decide whether drivers received their final paycheck, had a regular practice of withholding drivers' final paychecks, and in this case refused to issue Plaintiff's last paycheck and escrow despite his authority to do so and notice that she had not received them. For purposes of this motion, the court is satisfied that Zitkevicius exercised sufficient control and authority over Plaintiff, in ways related to the alleged FLSA violation, so as to qualify as an employer under the FLSA.[3]

In reaching this conclusion, *Roberts v. Apple Sauce, Inc.*, is instructive. 945 F. Supp. 2d 995 (N.D. Ind. 2013). There, a restaurant server sued the restaurant's management companies under FLSA's minimum wage provisions, and defendant Smith—president of those management companies—moved to dismiss, arguing that plaintiff had not sufficiently alleged that he was a FLSA employer. Id. at 1005. The court disagreed. Plaintiff had alleged that Smith was the president and sole living shareholder of both companies, was involved in the day-to-day operations, and was involved in the policies that gave rise to the minimum wage claims at issue there. *Id*. Those allegations were sufficient, in the court's view, "to plausibly suggest that Smith is an employer." *Id*. "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer . . . This includes [a] corporate officer with significant ownership interests, day-to-day control of operations, and involvement in the supervision and payment of employees." *Id*. (internal quotations omitted) (collecting cases). This describes Zitkevicius who, Plaintiff has alleged, was the owner and

---

motion to dismiss stage, "ambiguities in complaints . . . should be interpreted in favor of plaintiffs, not defendants." *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992).

[3]    In her response brief, Plaintiff adds "that [Zitkevicius] made the decision to terminate her employment as a ZBA driver and to hire her as an NR 1 driver" and "that [Zitkevicius] hired truck drivers for NR 1 and recruited drivers through his personal Facebook page." (Resp. to MTD [46] at 6.) Though Plaintiff did not include these allegations in her complaint, the Seventh Circuit allows a plaintiff opposing a Rule 12(b)(6) motion to "elaborate on [her] factual allegations so long as the new elaborations are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). These additional assertions bolster the conclusion that Plaintiff sufficiently alleged that Zitkevicius is an employer.

operator of NR 1 and ZRA, supervised day-to-day activities, had the authority to decide whether employees received their final paycheck, had a regular practice of withholding final paychecks upon termination, and refused to give Plaintiff and Donald Brown their final paychecks when they asked, despite having the authority to do so. Those circumstances support Plaintiff's contention that Zitkevicius is liable.

The case law Defendants cite in opposition to this conclusion is not persuasive. First, Defendants note that in *Schneider* itself, the court ultimately concluded that two of the defendant restaurant's owners were not employers within the meaning of FLSA. 148 F. Supp. 3d 690 (N.D. Ill. 2015). Plaintiffs in that case were restaurant workers who sued the restaurant's general manager and one-third owner, as well as two brothers who financed the restaurant and owned the other two thirds. Plaintiffs alleged that the general manager had been altering work records, resulting in workers receiving less pay than called for by FLSA minimum wage and overtime provisions. *Id.* at 694–96. Judge Shah held the manager liable, but not the two brothers. They had helped to finance the restaurant, but did not know that the general manager was deleting hours, did not know enough about the restaurant business to "suspect something might be amiss," and did not control the company's operations either on a day-to-day or big picture basis. *Id*. at 698–99. Moreover, when the brothers learned of the violations in question, "they acted immediately to fix them (in part, at least)." Id. at 699. Importantly, the brothers "did not exercise authority that caused the violation." Id. Based on Plaintiff's allegations here, the same cannot be said for Zitkevicius.

Nor do Defendants' citations to *Bohr* or *Al-Quraan* sway the court. In *Bohr v. Corrigan Moving Systems*, the court granted defendant general manager's motion to dismiss a FLSA claim for failing to plausibly allege that he was an employer, but it did so because plaintiff alleged nothing more than that the manager was "engaged in the business of providing relocation and moving services to the public" and was "acting directly or indirectly in the interest of the employer in relation to the employee Plaintiff." No. 09 C 4281, 2009 WL 3517748, at *1 (N.D. Ill. Oct. 29,

2009).  Similarly, in *Al-Quraan v. 4115 8th St. NW, LLC*, the district court dismissed FLSA claims against an owner of the relevant business where the complaint alleged only that the defendant was an owner and officer who operates the business and "agreed with and benefitted from the illegal [compensation] agreement" with the plaintiff.  113 F. Supp. 3d 367, 369–70 (D.D.C. 2015).  The plaintiff's allegations were insufficient as they "amount[ed] to no more than a formulaic recitation of the elements of the cause of action."  *Id.* at 370 (internal quotations omitted).  The allegations against Zitkevicius are far more detailed than the conclusory allegations in either *Bohr* or *Al-Quraan*.

The court thus denies Defendants' motion to dismiss the FLSA claim against Zitkevicius.

### 2.    Knowing violation of the IWPCA

The Illinois Wage Payment and Collection Act was adopted "to provide Illinois employees with a cause of action for the timely and complete payment of earned wages or final compensation."  *Watts v. ADDO Mgmt., L.L.C.*, 2018 IL App (1st) 170201 ¶ 12, 97 N.E.3d 75, 79 (1st Dist. 2018).  Defendants ask the court to dismiss the IWPCA claim against Zitkevicius on the ground that Plaintiff failed to allege that Zitkevicius had the "knowledge" required to prove an IWPCA claim.  Defendants concede that "any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of [the IWPCA] shall be deemed to be the employers of the employees of the corporation."  (MTD [35] at 4 (quoting 820 ILCS § 115/13).)  Defendants argue, however, that even if Zitkevicius was aware of the existence of NR 1's policies that allegedly violated Plaintiff's FLSA rights, and even if he had the authority to stop those policies, the allegations in the complaint do not provide sufficient "factual evidence of [Zitkevicius] knowingly violating Plaintiff's rights under the IWPCA . . . " (MTD at 4.)  At the motion to dismiss stage, however, no factual evidence is required to prove any of Plaintiff's claims.  To the extent that Zitkevicius is arguing that the complaint has not sufficiently alleged that he "knowingly permitted" NR 1 to violate Plaintiff's IWPCA rights, the court disagrees.  The Amended Complaint alleges that Zitkevicius was aware of NR 1's escrow deduction policy (and had the

authority to put an end to it) (Am. Compl. ¶ 20), knew that Plaintiff and Donald Brown did not receive their last paycheck or escrow money, refused to remedy these problems (*id.* ¶¶ 25–26, 28), and, along with the other Defendants, regularly withheld drivers' escrow funds and final paychecks. (*Id.* ¶ 27.)

If Defendants are arguing that Zitkevicius is not liable because he did not know that the challenged conduct violated the IWPCA, the court again disagrees. Zitkevicius is alleged to have known about NR 1's wage policies and, as explained, is himself classified as Plaintiff's employer under the IWPCA. 820 ILCS § 115/13. Plaintiff requests relief authorized by the Act, in the form of unpaid wages, a 2% penalty on unpaid wages, and all costs and reasonable attorneys' fees. (*Id.* ¶ 53.) Under the IWPCA, such remedies are available for *any employee* against the employer, regardless of the employer's knowledge or fault. *Compare* 820 ILCS § 115/14(a) (providing for such relief regardless of knowledge or intent), *with* 820 ILCS § 115/14(a-5) (providing separate punishments for employers who "willfully refuse[ ]" to pay required wages); *cf. Watts*, 2018 IL App (1st) 170201 ¶ 14, 97 N.E.3d at 80 ("To state a claim [for unpaid wages] under the Wage Act, a plaintiff must plead that (1) he had an employment agreement with the employer that required the payment of wages or final compensation and (2) that the defendants were employers under the Wage Act."). Because Zitkevicius qualifies as Plaintiff's employer, Plaintiff can seek such relief from Zitkevicius for alleged IWPCA violations even if Zitkevicius himself did not take action that he knew to violate the IWPCA.

Defendant's motion to dismiss the IWPCA claim against Zitkevicius is denied.[4]

---

[4] Defendants also argue that the FLSA and IWPCA claims against Zitkevicius should be dismissed because Plaintiff has not alleged any "piercing the corporate veil theories" under which Zitkevicius could be found personally liable as a shareholder of NR 1. (MTD at 5.) Such a theory is not necessary, however, as both the FLSA and IWPCA explicitly extend liability to individual employers. 29 U.S.C. § 203(d); 820 ILCS §§ 115/2, 115/13; *see McLaughlin v. Lunde Truck Sales, Inc.*, 714 F. Supp. 920, 922–23 (N.D. Ill. 1989) (rejecting defendants' argument that the term "employer" under the FLSA should "include corporate officers only where in ordinary civil litigation similar circumstances would merit the piercing of the corporate veil").

### 3.    FLSA preemption

Defendants next argue that Plaintiff's IWPCA, conversion, and unjust enrichment claims are preempted by the FLSA.   "[S]tate law claims are not automatically preempted by the FLSA." *Sorensen v. CHT Corp.*, Nos. 03 C 1609 & 03 C 7362, 2004 WL 442638, *6 (N.D. Ill. Mar. 10, 2004).   But "[c]laims that are directly covered by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA . . . ."  *Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 659 (N.D. Ill. 2007) (quoting *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1154 (9th Cir. 2000)).   Indeed, courts have consistently held that state common law claims, such as unjust enrichment and conversion, are preempted by the FLSA insofar as they seek relief based on the same factual allegations that could support a FLSA claim.   *See Kyriakoulis v. DuPage Health Ctr., Ltd.*, No. 10 C 7902, 2011 WL 2420201, at *1 (N.D. Ill. June 9, 2011) (collecting cases); *see also Farmer v. DirectSat USA, LLC*, No. 08 C 3962, 2010 WL 3927640, at *15 (N.D. Ill. Oct. 4, 2010) (collecting cases).

Defendants are wrong, however, in suggesting that this principle defeats all of Plaintiff's state claims.   The FLSA preempts state *common law* claims, but specifically preserves wage claims based on state *statutory* law.   *See* 29 U.S.C. § 218(a); *Farmer*, 2010 WL 3927640, at *14–15; *Kyriakoulis*, 2011 WL 2420201, at *2 (collecting cases).   For example, in *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, the court noted that "the FLSA contains a 'savings clause' that expressly allows states to provide workers with more beneficial minimum wages and maximum workweeks than those mandated by the FLSA itself."  589 F. Supp. 2d 1026, 1030–31 (E.D. Wis. 2008) (citing 29 U.S.C. § 218(a)).   And while Section 218(a) of the FLSA refers only to state laws that provide a "minimum wage higher than the [federal] minimum wage" or "a maximum workweek lower than the [federal] maximum workweek," the court observed that a reasonable interpretation of this section is that it displays Congress's intent to preempt only state wage statutes that are "less generous than those of the FLSA."   *DeKeyser*, 589 F.3d at 1030–31.   As relevant here,

13

courts regularly consider FLSA and IWPCA claims in the same action. *See, e.g.*, *Snell-Jones v. Hertz Corp.*, No. 19-CV-00120, 2020 WL 1233825, at *5–6 (N.D. Ill. Mar. 13, 2020) (denying a motion to dismiss FLSA and IWPCA claims brought in the same action); *Chagoya v. City of Chicago*, 992 F.3d 607, 615, 624 (7th Cir. 2021) (considering both FLSA and IWPCA claims in the same action). The FLSA does not preempt Plaintiff's IWPCA claim.

Defendant's preemption challenge to Plaintiff's conversion and unjust enrichment claims requires more scrutiny. As noted above, courts have consistently found that state common-law claims are preempted to the extent that they seek remedies for rights protected by the FLSA. *See, e.g.*, *Helm v. Alderwoods Grp., Inc.*, 696 F. Supp. 2d 1057, 1076 (N.D. Cal. 2009) (noting that the FLSA "preempts common law claims that seek remedies for rights protected by the FLSA (such as minimum wage and overtime pay)."). Plaintiff's conversion and unjust enrichment claims appear to seek such remedies—namely, wages that Defendants denied Plaintiff in contravention of the FLSA's minimum wage provision. Thus, to the extent that Plaintiff's conversion and unjust enrichment claims seek minimum wage or overtime pay, those claims are preempted.

Not so, however, to the extent that Plaintiff's conversion and unjust enrichment claims seek unpaid wages that cannot be classified as either minimum wage or overtime pay. On this point, *Nicholson v. UTi Worldwide, Inc.*, is instructive. No. 3:09–cv–722–JPG–DGW, 2010 WL 551551 (S.D. Ill. Feb. 12, 2010). There, defendant argued that plaintiff's *quantum meruit* and unjust enrichment claims were preempted because they were based on the same facts that supported plaintiff's FLSA claim. *Id.* at *5. Plaintiff countered that, in his common law claims, he sought compensation only for "gap time," that is "compensation for hours worked (1) before the employee reaches the forty-hour per week overtime threshold, so it cannot violate overtime compensation laws, and (2) at a rate that averages out to more than the applicable minimum wage, so it cannot violate minimum wage laws." *Id.* Such "gap time" compensation is not recoverable under the FLSA. *Id.* (citing *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2004 WL 1882449, at *5 (N.D. Ill. Aug. 18, 2004)). The *Nicholson* court concluded that

14

plaintiff's common law claims for overtime pay were preempted, but "[t]o the extent Nicholson seeks pay for 'gap time,' that claim is not cognizable under the FLSA and may survive." *Nicholson*, 2010 WL 551551, at *6.

Defendants cite no case law holding that the FLSA preempts common law claims for wages not recoverable under the FLSA. Instead, Defendants cite *Sorensen*, 2004 WL 442638, at *1, *5, and *Morgan*, 625 F. Supp. 2d at 658, both cases in which plaintiff restaurant workers brought unjust enrichment claims for tips that defendant restaurants took from plaintiffs. Those claims were preempted because Section 203(m) of the FLSA expressly governs the complained-of "tip pooling" systems. *Sorenson*, 2004 WL 442638, at *6; *Morgan*, 625 F. Supp. 2d at 659. Defendants here have identified no equivalent FLSA provision for recovery of non-overtime wages in excess of the minimum wage. Nor do Defendants' other cited cases address claims for contracted-for wages that would qualify as neither minimum wage nor overtime pay. *Cf. Tombrello v. USX Corp.*, 763 F. Supp. 541, 545 (N.D. Ala. 1991) (dismissing plaintiff's common law claim "for work and labor done" because "[t]he FLSA creates statutory rights of an employee to be paid a minimum wage" and Section 216(b) "is the exclusive remedy for enforcing rights created under the FLSA."); *Deschepper*, 84 F. Supp. 3d at 779–80 ("[I]f all that is sought in a state law quantum meruit or unjust enrichment claim is unpaid overtime compensation or minimum wages that are guaranteed by the FLSA, those state law claims are preempted.") In this case, the court presumes that Plaintiff's claims relating to the escrow deductions and her final paycheck seek wages at a contracted rate that exceeds the minimum wage guaranteed by the FLSA. (*See* Am. Compl. ¶¶ 54–61.) Under that presumption (which may, of course, be rebutted at a later stage), the court concludes those claims are not preempted and declines to dismiss them on this basis.

### 4. Conversion

Defendants have challenged Plaintiff's common law claims on other bases as well. The conversion claim fails, they urge, because under Illinois law, "an action for the conversion of funds

may not be maintained to satisfy a mere obligation to pay money." *Eggert v. Weisz*, 839 F.2d 1261, 1264 (7th Cir. 1988) (quoting *In re Thebus*, 108 Ill.2d 255, 260, 483 N.E.2d 1258, 1260 (1985)). Instead, money can be the subject of conversion only if it is "capable of being described as a specific chattel," *id.,* that is, in circumstances where the funds at issue "are capable of being described, identified, or segregated in a specific manner." *Bill Marek's The Competitive Edge, Inc. v. Mickelson Grp., Inc.*, 346 Ill. App. 3d 996, 1003–04, 806 N.E.2d 280, 285–86 (2d Dist. 2004) (collecting cases). And a claim of conversion is not available to enforce a "right to an indeterminate sum." *Id.* (citing *Mid-America Fire & Marine Ins. Co. v. Middleton*, 127 Ill. App. 3d 887, 892, 468 N.E.2d 1335, 1338–39 (4th Dist. 1984)).

Defendants contend that Plaintiff's conversion claim must be dismissed because it is aimed at an indeterminate sum rather than funds that are capable of being described, identified, or segregated in a specific manner. (MTD at 5–6.) In support of this argument, Defendants discuss *Murrell v. Mufflers 4 Less III, Inc.*, No. 1:19-CV-03238, 2020 WL 4505826 (N.D. Ill. Aug. 5, 2020). In that case, a car mechanic sued his former employer for unpaid overtime wages, and the employer counterclaimed, alleging that plaintiff had made side deals with the employer's customers to perform car maintenance services for which the customers paid plaintiff directly. *Id.* at *1. The court dismissed the employer's conversion claim on the ground that the money the employer sought was an indeterminate sum. *Id.* at *2–3. The court found it important that the employer had not alleged how much money was involved, "or even a manner by which [the employer] would be able to identify this amount." *Id*.

In this case, in contrast to *Murrell,* Plaintiff has identified the precise sum of escrow funds that Defendants allegedly converted: $2,250. (Am. Compl. ¶ 56.) True, as Defendants argue, Plaintiff referred to her final paycheck as "a currently unknown amount of money," but she also alleges that this amount could be easily "ascertained by reviewing Defendants' records showing how many miles Plaintiff drove in her final workweek." (*Id.*) These allegations are sufficient under Illinois law. For example, in *Roderick Dev. Inv. Co., Inc. v. Cmty. Bank of Edgewater*, plaintiff was

permitted to pursue a conversion claim for five percent of a purchaser's final payment, without specifying exactly how much five percent of that payment amounted to. 282 Ill. App. 3d 1052, 1062, 668 N.E.2d at 1136. Here, the amount of Plaintiff's final paycheck will be easily ascertainable upon discovery of the number of miles Plaintiff drove in her final week. Defendants' motion to dismiss Plaintiff's claim for conversion is denied.

### 5. Unjust Enrichment

Finally, Defendants argue that Plaintiff's unjust enrichment claim cannot be asserted as a stand-alone claim and must instead rise and fall with the fates of Plaintiff's other claims. On this point, the court agrees. The parties' discussion of this issue focuses on *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516–18 (7th Cir. 2011), where the Seventh Circuit noted a split in Illinois cases, with some courts recognizing unjust enrichment as an independent cause of action and others refusing to do so. *Compare Raintree Homes, Inc. v. Vill. of Long Grove*, 209 Ill.2d 248, 258, 807 N.E.2d 439, 445 (2004) ("Here, plaintiffs have no substantive claim grounded in tort, contract, or statute; therefore the only substantive basis for the claim is restitution to prevent unjust enrichment."), *with Martis v. Grinnell Mut. Reinsurance Co.*, 388 Ill. App. 3d 1017, 1024, 905 N.E.2d 920, 928 (3d Dist. 2009) ("Unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery."). While the court in *Cleary* did not definitively reconcile this split in case law, the Seventh Circuit has since clarified its view that "[u]nder Illinois law, unjust enrichment is not a separate cause of action." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739–40 (7th Cir. 2019). Rather, "the request for relief based on unjust enrichment is tied to the fate of the [corresponding statutory] claim." *Id.*; *accord Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019). Here too, Plaintiff's unjust enrichment claim is tied to the fate of her statutory claims and her conversion claim. It does not provide an independent basis for recovery and is therefore dismissed without prejudice.[5]

---

[5] Defendants also argue that Plaintiff's unjust enrichment claim should fail because the relevant portions of Plaintiff and Defendants' relationship were governed by a contract. (MTD

* * *

Defendants' motion to dismiss is granted with respect to Plaintiff's unjust enrichment claim, and otherwise denied.

## B.    Motion for Conditional Collective Action Certification

Next, the court addresses Plaintiff's motion for conditional certification of her FLSA claim as a collective action under 29 U.S.C. § 216(b).[6]   In the event that an employer fails to pay minimum wage to its employees, the FLSA allows a single employee to bring a "collective action" on behalf of herself and "other employees similarly situated."  29 U.S.C. § 216(b); *accord Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1046 & n.1 (7th Cir. 2020).  A FLSA collective action resembles a class action under Federal Rule of Civil Procedure 23 but differs in certain respects.  Most notably, members of a FLSA collective action "must opt into the suit to be bound by the judgment or settlement in it, while in a class action governed by Rule 23(b)(3) (a class action seeking damages) they must opt out *not* to be bound."  *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771 (7th Cir. 2013) (emphasis in original).  In order to opt into a FLSA collective action, prospective plaintiffs must file a written consent to join the suit.  *See Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010).  Given this opt-in requirement, district courts can grant plaintiffs permission "to send notice to potential class members, prior to discovery, to advise them of the lawsuit's existence, their right to join the suit and how to do so."  *Shiner v. Select Comfort Corp.*, No. 09 C 2630, 2009 WL 4884166, at *2 (N.D. Ill. Dec. 9, 2009); *accord Hoffmann-La Roche Inc.*

---

Reply [51] at 6; *see Util. Audit Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688–89 (7th Cir. 2004) ("When two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract.").)  Regardless of the merits of this argument, the court will not address it because Defendants waived it by failing to raise it until their reply brief.  *Mendez v. Perla Dental*, 646 F.3d 420, 423–24 (7th Cir. 2011) ("[I]t is well-established that arguments raised for the first time in the reply brief are waived.").

[6]      In the Amended Complaint, Plaintiff also indicated her intention of bringing her IWPCA claim, her conversion claim, and her unjust enrichment claim as class actions under Federal Rule of Civil Procedure 23.  (Am. Compl. ¶¶ 35–36.)  She has not yet filed a motion to certify a Rule 23 class for any of those claims.

*v. Sperling*, 493 U.S. 165, 170 (1989) ("These benefits [of Section 216(b) collective actions], depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."). District courts have discretion to authorize the sending of such notice to potential plaintiffs. *Bigger*, 947 F.3d at 1046–47 (citing *Hoffman-La Roche*, 493 U.S. at 170–71); *see Alvarez*, 605 F.3d at 449 ("A district court has wide discretion to manage collective actions.").

The Seventh Circuit has not yet articulated how a district court should exercise its discretion in deciding whether to authorize notice for purposes of a FLSA collective action. *Shiner*, 2009 WL 4884166, at *2 (collecting cases that note this lack of guidance). In *Bigger*, the Seventh Circuit noted—without indicating approval or disapproval—the use by some courts of "a two-stage procedure for determining whether individuals are 'similarly situated' to the named plaintiff(s)." 947 F.3d at 1049 n.5. *See, e.g., Brand v. Comcast Corp.*, No. 12 CV 1122, 2012 WL 4482124, at *3 n.3 (N.D. Ill. Sept. 26, 2012) (collecting cases from this district); *see also Persin v. CareerBuilder, LLC*, No. 05 C 2347, 2005 WL 3159684, at *1 (N.D. Ill. Nov. 23, 2005) (collecting cases from the Courts of Appeals). This two-step process allows courts to determine whether potential members of the collective action are "similarly situated" to plaintiff for purposes of § 216(b).

Under the first step, "the court applies a lenient standard, requiring the putative lead plaintiff to make a 'minimal showing' that other employees are similarly situated." *DeMarco v. Nw. Mem'l Healthcare*, No. 10 C 397, 2011 WL 3510905, at *1 (N.D. Ill. Aug. 10, 2011) (citations omitted). Such a "'modest factual showing,' however, cannot be founded solely on allegations in the complaint; some factual support must be provided, such as in the form of affidavits, declarations, deposition testimony, or other documents." *Anyere v. Wells Fargo Co.*, No. 09 C 2769, 2010 WL 1542180, at *2 (N.D. Ill. Apr. 12, 2010). Plaintiffs can fulfill this minimal requirement by showing that "they and potential plaintiffs together were victims of a common policy or plan that violated the law," *id.* at *1 (internal quotations omitted), or, even absent such a

19

policy or plan, by showing that "a collective action would promote judicial economy because there is otherwise an identifiable factual or legal nexus." *Molina v. First Line Sols. L.L.C.*, 566 F. Supp. 2d 770, 787 (N.D. Ill. 2007). Such a determination supports "conditional certification" of the representative class, allowing the court, in its discretion, to order that notice be provided to potential plaintiffs who then have the opportunity to opt in to the collective action. *Shiner*, 2009 WL 4884166, at *2.

Under the second step, "following the completion of the opt-in process and further discovery, the defendant may ask the court to 'reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis.'" *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008) (quoting *Jirak v. Abbott Lab'ys., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008)). At this point, the court engages in a more stringent "fact-intensive inquiry" to determine "the veracity of the allegations that all putative claimants are similarly situated." *Persin*, 2005 WL 3159684, at *4. If the court determines that putative claimants are not sufficiently similarly situated, the court may revoke the conditional certification. *Russell*, 575 F. Supp. 2d at 933.

### 1. A "modest factual showing" of similarity

For now, the court looks only at the first step of the inquiry and concludes that Plaintiff has made the necessary factual showing. The four declarations she has submitted establish that she and three fellow drivers for NR 1 and ZBA have the following in common: (1) NR 1 and ZBA owned the trucks they drove, paid for insurance on the trucks, and paid for fuel and maintenance for the trucks; (2) the companies prohibited the declarants from driving their trucks for other companies; (3) the declarants invested none of their own money in their jobs, and the Defendants deducted occupational accident insurance payments and office fees from their paychecks; (4) the declarants were paid approximately 60 cents per mile; (5) the companies refused to pay the declarants for their final week of work, during which each declarant worked over 30 hours; and (6) the companies deducted "escrow" charges from each declarant's pay check but refused to

pay back the escrow amount when the declarant's employment terminated. (*See generally* Dawkins Decl.; Brown Decl.; Wainwright Decl.; Rodriguez Decl.) Without specifically identifying other workers subject to these same polices, the four declarants also noted their understanding that this lawsuit could reach "dozens of other workers" seeking minimum wages and unlawful reductions from ZBA and NR 1. (Dawkins Decl. ¶ 10; Brown Decl. ¶ 11; Wainwright Decl. ¶ 10; Rodriguez Decl. ¶ 11.)

In addition to these declarations, Plaintiff submitted a May 8, 2018 complaint filed by a former NR 1 company truck driver (whose identity was redacted) with the Illinois Department of Labor ("IDOL"). That complaint made allegations similar to the ones here, including that the company owned the complainant's truck and paid to fuel and maintain it; that the complainant was paid 54 cents per mile; and that, three months after the complainant had left NR 1, NR 1 still had not paid complainant's final paycheck of $4,233. (IDOL Compl. at 2.) That complaint included a copy of the complainant's contract with NR 1 which stated that "All drivers are required to give a two week notice to terminating job. Failure to comply operator [*sic*] will be subject to forfeit of the last check." (*Id.* at 5.) Given these facts, the court is satisfied that Plaintiff has made a minimal showing that other potential plaintiffs are similarly situated to Plaintiff and has met the lenient standard for certification of a conditional collective action.

Defendants raise a number of objections to this finding.[7] First, Defendants argue that Wainwright is not similarly situated to Plaintiff because Wainwright appears to be seeking relief from ZBA rather than NR 1. Wainwright states in his declaration that he did not receive his final paycheck "[w]hen my employment with ZBA was terminated" despite the fact that he had "worked

---

[7] Defendants also argue, more generally, that Plaintiff's motion for conditional collective action certification is based on a "non-operative pleading" because Plaintiff filed it *before* filing her Amended Complaint. Defendants cite *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) for the proposition that this motion is thus invalid. *Massey* says no such thing. There, the Seventh Circuit held merely that "[b]ecause a plaintiff's new complaint wipes away prior pleadings, the amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses." *Id. Massey* is thus inapposite.

more than thirty hours for ZBA during that week." (Wainwright Decl. ¶ 7.) As Defendants note, ZBA has not been served in this case, and Plaintiff does not name ZBA in this motion. But Wainwright has asserted that "ZBA and NR1 were one and the same" and that it was *NR 1* who "refused to pay [him] work performed [*sic*] in [his] last week of employment." (*Id.* ¶¶ 3, 7.)

In any event, Plaintiffs can demonstrate the requisite factual showing of similarity even without Wainwright's declaration. Three other declarations are in the record, as well as the IDOL complaint described above. Defendants argue that Plaintiff should have presented bank information or pay stubs in further support of her claims, but other courts have found the necessary factual showing on less evidence than Plaintiff presents here. *See, e.g.*, *Ruffin v. Ent. of the E. Panhandle*, No. 3:11-CV-19, 2012 WL 761659, at *5 (N.D. W. Va. Mar. 7, 2012) (conditionally certifying FLSA collective action solely on the basis of plaintiff's affidavit that she and others were not paid the federally required minimum wage); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 468–69 (N.D. Cal. 2004) (conditionally certifying a collective action based on affidavits from three plaintiffs, "asserting that they often work more than forty hours per week without overtime pay and claiming that their experiences are common to the whole proposed class"); *Swartz v. D-J Eng'g, Inc.*, No. 12-CV-1029-JAR, 2013 WL 5348585, at *6 (D. Kan. Sept. 24, 2013) (three declarations sufficient); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 239 (N.D.N.Y. 2002) (three affidavits sufficient); *Martinez v. First Class Interiors of Naples, LLC*, No. 3:18-CV-00583, 2019 WL 4242409, at *4 (M.D. Tenn. Sept. 6, 2019) (affidavits from each plaintiff and one putative class member sufficient). Here, the three declarations (or four if we count Wainwright's) and the IDOL complaint satisfy the modest factual showing required to send notice to other putative plaintiffs.[8]

---

[8] Defendants appear concerned that the declarations here are too similar, noting that many of the statements from each declarant are identical in their wording. (Cert. Resp. at 3, 6.) The court is not troubled by these similarities absent some basis for belief that the statements in the declarations are fabricated. *See Martinez*, 2019 WL 4242409, at *3 n.6 (rejecting a similar argument in the first step of the conditional collective action analysis).

Next, Defendants argue that Rodriguez does not have a valid claim under the FLSA because Rodriguez stated that, "many months" after he stopped working for NR 1, he received half of the wages from his final week of work after filing a complaint with the Texas Workforce Commission.  (Rodriguez Decl. ¶ 10.)  But of course, if the wages that Rodriguez received amount to less than the sum to which he is entitled, Rodriguez's situation is sufficiently similar to support collective treatment.  And regardless, the Seventh Circuit has held that the FLSA "is violated even if the employer eventually pays the . . . amount that was due [under the statute]."  *Howard v. City of Springfield, Ill.*, 274 F.3d 1141, 1148 (7th Cir. 2001) (collecting cases); *see also Calderon v. Witvoet*, 999 F.2d 1101, 1107–08 (7th Cir. 1993) (affirming the district court's ruling that "retaining any part of the minimum wage past the end of the pay period violates the FLSA"); *Martinez*, 2019 WL 4242409, at *8 (rejecting defendants' argument that putative class members were not "similarly situated" even though "seventy-five of the roughly eighty putative class members" had received the entirety of the relevant wages in an agreement with the Department of Labor).

Defendants also argue that Zitkevicius's own affidavit "precludes any notion that Plaintiff and other drivers are 'similarly situated.'"  (Cert. Resp. at 7.)  As relevant here, Zitkevicius states that (1) NR 1 negotiates contracts independently with each driver so that the terms of each driver's contract vary, (2) each driver's compensation differs based on individual factors, (3) each of the drivers for NR 1 works different hours and travels a different route, (4) some drivers operate as business entities while others are incorporated, and (5) NR 1 does not provide uniform policies for its drivers to follow.  (*Id.* (citing Zitkevicius Aff. ¶¶ 4–8, 10).)  Some case law suggests the court need not consider competing affidavits at all at step one of the conditional certification process. *See, e.g.*, *Martinez*, 2019 WL 4242409, at *8 (observing that "balancing [ ] competing affirmations would require credibility determinations, which are inappropriate at this stage of the litigation"); *In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ 1145(NRB), 2010 WL 4340255, at *2 (S.D.N.Y. Oct. 27, 2010) (hereinafter "*Penthouse*") ("[A]t this first stage [of the conditional certification

process], the court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations.") (internal quotations omitted).

To the extent that courts do consider competing evidence at this stage, plaintiffs need only "'modestly' overcome any contrary evidence submitted by defendant[s]." *Molina*, 566 F. Supp. 2d at 786. Plaintiff in this case has done so. First, referencing images of NR 1's website, Plaintiff notes that NR 1 hires some drivers as owner-operators and others as company drivers (who presumably do not own their trucks). Plaintiff seeks permission to send notice only to company drivers (Cert. Reply at 1), and argues that many of the differences Zitkevicius identifies involve variations among owner-operators, who tend to have more control over their employment conditions and who would not be part of the opt-in class. Indeed, "[t]he distinction between owner-operators and company drivers is a highly significant one in the trucking industry." *Bruger v. Olero, Inc.*, 434 F. Supp. 3d 647, 655–56 (N.D. Ill. 2020) (citing *Mazzei v. Rock N Around Trucking, Inc.*, 246 F.3d 956, 964 (7th Cir. 2001)). The four declarants and the IDOL complainant all stated that they had been "company truck driver[s]," and the four declarants stated that Defendants owned the trucks that they drove, while the IDOL complainant, too, was allegedly "driving the company truck." (Dawkins Decl. ¶¶ 2, 4; Brown Decl. ¶¶ 2, 4; Wainwright Decl. ¶¶ 2, 4; Rodriguez Decl. ¶¶ 2–3; IDOL Compl. at 2.) If differences exist among the declarants, the IDOL complainant, and other company drivers, such differences are not necessarily fatal. *See Jirak*, 556 F. Supp. 2d at 848–49 (rejecting defendant's argument that conditional collective action certification should be denied based on "some variations in [putative plaintiffs'] job duties"). At the conditional certification stage, putative plaintiffs "need not be in the same identical job or situation" as the Plaintiff seeking to send notice. *Molina*, 566 F. Supp. 2d at 786 (collecting cases).

Defendants cite a number of cases in which courts found that differences among putative plaintiffs were significant enough to defeat collective treatment.[9] But these are largely

---

[9] Defendants also identified *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424 (N.D. Ill. 2003). That case, however, is of little relevance as it dealt with a series of Title VII

distinguishable. In *Bunyan v. Spectrum Brand, Inc.*, substantial discovery had already occurred, leading the court to apply a more searching level of review than is typical at step one. No. 07-CV-0089-MJR, 2008 WL 2959932, at *3–4 (S.D. Ill. July 31, 2008). In *Donihoo v. Dall. Airmotive, Inc.*, the court turned down a request to send notice of a collective action to *all* of defendant's employees but approved notice to employees who had the same title as and were similarly situated to plaintiff. No. CIV.A.3:97-CV-0109-P, 1998 WL 91256, at *1–2 (N.D. Tex. Feb. 23, 1998). Plaintiff in this case seeks leave to send notice only to company drivers, rather than to all company drivers and owner-operators. (Cert. Reply at 1.) The court's ruling today is thus consistent with *Donihoo*. In *Brooks v. A Rainaldi Plumbing, Inc.*, the court found no substantial similarity among individuals in who worked for "different companies, in different positions, under different compensation structures." No. 606CV-631-ORL-31DAB, 2006 WL 3544737, at *2 (M.D. Fla. Dec. 8, 2006). The potential claimants here are not nearly so dissimilar.

Finally, in the three remaining cases cited by Defendants, courts denied motions to conditionally certify FLSA collective actions in the context of narrow, fact-specific exceptions to the FLSA's requirements. *See Reich v. Homier Distrib. Co.*, 362 F. Supp. 2d 1009, 1013, 1015 (N.D. Ind. 2005) (declining to conditionally certify because determining whether each plaintiff "qualifies as a loader (and is therefore exempt from the FLSA) will require a highly individualized, fact-specific inquiry"); *Threatt v. CRF First Choice, Inc.*, No. 1:05CV117, 2006 WL 2054372, at *6, *14 (N.D. Ind. July 21, 2006) (decertifying a conditional FLSA collective action because discovery had revealed that the court would have to "engage in highly individualized, fact-specific analysis to determine whether each plaintiff" falls under the "companionship services exemption"); *Clausman v. Nortel Networks, Inc.*, No. IP02-0400-C-M/S, 2003 WL 21314065, at *4 (S.D. Ind. May 1, 2003) (denying conditional certification where the court would have been "required to make a fact-intensive inquiry into each potential plaintiff's employment situation" to determine whether

---

claims rather than FLSA claims and denied class certification under Federal Rule of Civil Procedure 23 rather than under § 216 of the FLSA. *Id.* at 428.

they fell under the "outside salesman" exception). Courts in this district tend to reserve judgment on such fact-specific exemptions for step two of the conditional certification process. *See, e.g.*, *Jirak*, 566 F. Supp. 2d at 849–50 (rejecting defendant's attempt to raise FLSA exemptions at step one, noting that "the application of an FLSA exemption is an affirmative defense on which Defendant carries the burden of proof . . . [and] cannot be determined based on the limited record developed at this stage"); *Perez v. RadioShack Corp.*, No. 02 C 7884, 2003 WL 21372467, at *11 (N.D. Ill. June 13, 2003) (same). In any event, Defendants have identified no such fact-specific FLSA exemption here.

Defendants contend that the court should decline to certify a collective action because the court will have to undergo a fact-specific inquiry to determine whether each potential plaintiff is an employee or an independent contractor. Unlike employees, independent contractors are not covered under the FLSA's minimum wage provision. *See Solis v. Int'l Detective & Protective Serv., Ltd.*, 819 F. Supp. 2d 740, 749 (N.D. Ill. 2011). The Supreme Court has instructed courts to construe the term "employee" expansively under the FLSA. *Simpkins v. DuPage Hous. Auth.*, 893 F.3d 962, 964 (7th Cir. 2018) (citing *Nationwide Mut. Ins. Co.*, 503 U.S. at 326). For the purposes of the FLSA, "employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Sec'y of Lab., U.S. Dep't of Lab. v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987). Courts determine the "economic reality" of the working relationship by the totality of the circumstances. *Simpkins*, 893 F.3d at 965. Relevant to this determination are the following factors:

> 1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; 4) whether the service rendered requires a special skill; 5) the degree of permanency and duration of the working relationship; 6) the extent to which the service rendered is an integral part of the alleged employer's business.[10]

---

[10] Note that this "economic reality" test for differentiating between FLSA employees and independent contractors is distinct from the "economic reality" test discussed above that some courts use to determine whether an individual is a FLSA "employer." *See supra* Part A.1.

*Lauritzen*, 835 F.2d at 1534–35.  The Seventh Circuit has since noted that, while helpful, these factors are "not the exclusive means by which the ultimate [economic reality] determination can be made."  *Simpkins*, 893 F.3d at 964–65.

Defendants insist that the fact-intensive nature of this determination militates against certification of a conditional collective action.[11]  The case law they cite does not support that argument.  In *Pfaahler v. Consultants for Architects, Inc.*, plaintiff had failed to show either that the claimants had similar relationships with each client or "that other potential claimants performed the same type of duties as [plaintiff]."  No. 99 C 6700, 2000 WL 198888, at *1-2 (N.D. Ill. Feb. 8, 2000).  Plaintiff's evidence here suggests that company drivers for NR 1 largely performed the same work (i.e., driving trucks to clients around the country), and there is little reason to believe those duties vary significantly from client to client.  In *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021), the Fifth Circuit vacated a district court's decision to conditionally certify a collective action of truck drivers suing for minimum wage violations, in part because the district court had failed to "consider the evidence relating to this threshold [employee-independent contractor] question to determine whether the economic-realities test could be applied on a collective basis."  *Id.* at 442.  Even so, the *Swales* court pointed out that the employee-independent contractor question did not preclude conditional collective action certification in all cases.  *Id.* at 443.  *In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*, 662 F. Supp. 2d 1069, 1082–83 (N.D. Ind. 2009) involved a proposed nationwide class of FedEx drivers seeking overtime pay, whose employment relationships depended on the law of multiple states—a far cry

---

[11]     According to Brown's Declaration, NR 1 labeled him as an independent contractor but treated him as a company driver.  (Brown Decl. ¶ 3.)  Such labels matter little to the question of whether an individual is, in fact, an employee or independent contractor for the purposes of FLSA.  *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947) ("Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the Act.").

from the proposed class here.  Similarly, *Demauro v. Limo, Inc.*, No. 8:10-CV-413-T-33AEP, 2011 WL 9191, at *4 (M.D. Fla. Jan. 3, 2011) involved a proposed nationwide class.

In a host of other cases, courts have certified collective actions even where defendant has argued that the putative plaintiffs are independent contractors rather than employees.  *See, e.g.*, *Perez v. Comcast*, No. 10 C 1127, 2011 WL 5979769, at *1, 2 (N.D. Ill. Nov. 29, 2011) (certifying collective action of cable technicians who alleged they were misclassified as independent contractors, noting that "[i]nquiry into the different positions and tasks of the putative plaintiffs is premature at this stage."); *Lemus v. Burnham Painting & Drywall Corp.*, No. 2:06-CV-01158-RCJ-PAL, 2007 WL 1875539, at *5 (D. Nev. June 25, 2007) (similar); *Putman v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264, 273–74 (S.D. Iowa 2011) (similar); *Penthouse*, 2010 WL 4340255, at *4 (finding a challenge to conditional certification of a class of dancers on the basis of individualized inquiries was borderline "specious").

In short, the possibility that a fact-intensive inquiry may be necessary later on does not preclude conditional certification at stage one.  Under the lenient standard that courts apply at step one of the FLSA collective action process, the court has little difficulty concluding that Plaintiff's request should be granted.[12]  If the opt-in process and discovery reveal that putative plaintiffs are not sufficiently similarly situated to warrant collective action certification under § 216(b), Defendants will be free to ask this court to decertify the class at that point.  *See, e.g.*, *Shiner*, 2009 WL 4884166, at *4 ("[Plaintiff] may have satisfied the first step, which entails a

---

[12]      Defendants also argue that the court should not grant conditional certification at this time because it "would result in an enormous (and unnecessary) expense to NR1." (Cert. Resp. at 7.)  Defendants do not clarify what this "enormous" expense would be.  "The sole consequence of conditional certification is the sending of court-approved written notice to employees . . . who in turn becomes parties to a collective action only by filing written consent with the court."  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).  To the extent that such conditional certification will increase discovery costs for Defendants, Defendants have provided no reason to believe those costs will be more exorbitant here than in any other case where courts regularly grant conditional certification based on step one's lenient standard.

relaxed inquiry, but there is no dispute that the inquiry becomes more stringent the second time around.").

### 2.    The proposed notice

Plaintiff has attached a proposed notice form to her motion for conditional certification. (*See* Ex. A to Cert. Mot. [19-1] (hereinafter "Proposed Notice").)   Defendants raise two objections to the language of the proposed notice.  First, Defendants contend that Plaintiff seeks to send the proffered notice to every individual who has worked as a company driver for either NR 1 *or* for Zitkevicius between June 20, 2017 and the present.  Defendants ask that the notice reflect that this suit applies only to company drivers who drove for NR 1.  It is not clear which portion of the proposed notice Defendants are referring to, but Zitkevicius is mentioned in the proffered notice only insofar as it identifies both NR 1 and Zitkevicius as Defendants.  The notice itself is titled "IMPORTANT NOTICE OF LAWSUIT TO ALL COMPANY TRUCK DRIVERS *WHO WORKED FOR NR 1 TRANSPORT* FROM JULY 10, 2017 TO THE PRESENT AND WHO DID NOT RECEIVE PAYMENT FOR THEIR FINAL WEEK OF WORK."   (*Id.* at 2 (emphasis added).) Defendants' first objection is overruled.

Second, Defendants object to language in the proffered notice which states, "If you decide not to join this case, then you will not be affected by any judgment or settlement of Plaintiff's legal claims under the FLSA.  You also may not be allowed to recover money damages, if any are awarded on these claims."  (*Id.* at 4.)  Defendants complain that this language provides an improper incentive for drivers to opt into the class on a promise of monetary recovery.  The court disagrees.  The statement in question merely reflects potential claimants' rights and allows them to make an informed decision about whether to opt into the present lawsuit.  Defendant has not identified any way in which the language at issue is inaccurate or misleading.

The court conditionally certifies Plaintiff's FLSA minimum wage claim as a collective action under § 216(b).  In doing so, the court authorizes Plaintiff to mail the notice attached to her motion to individuals who worked as "company drivers" at NR 1 between June 10, 2017 and the present

29

day, who received no pay for the last week of work that they performed. Within 14 days of this ruling, the court directs Defendants to produce, in a computer-readable format, the names, last-known addresses, and e-mail addresses of all individuals who worked as "company drivers" at NR 1 between June 10, 2017 and the present day. Finally, the court will allow putative plaintiffs to opt into this lawsuit until two months after the date the notice is mailed.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss [34] is granted in part and denied in part. Plaintiff's motion for conditional FLSA collective action certification [18] is granted. Defendants are directed to produce a list of putative plaintiffs and their contact information, in computer-readable format, within 14 days of this ruling. The parties are directed to submit a joint written status report on October 27, 2021.

ENTER:

Dated:  September 8, 2021

_____
REBECCA R. PALLMEYER
United States District Judge